OPINION OF THE COURT
Sam Eisenberg, J.
The defendant is the owner of a multifamily dwelling in the City of Mount Vernon. He is charged with failing to supply heat and hot water on March 3, 4 and 5, 1980 in violation of the city’s housing code. The credible evidence established that, in fact, there was no heat or hot water on the premises March 3 and 4 and that it was restored in the afternoon of the 5th. The evidence established further that the disruption in the heat and hot water was caused by a break in a heat riser pipe in the front hallway on Saturday afternoon, March 1, as a result of freezing conditions; that at the time the furnace was operable and there was adequate fuel oil; that the defendant had no reason to anticipate the pipe break; that the defendant contacted three plumbers over the weekend, all of whom refused to come out during the weekend (March 1 and 2); that one of them agreed to look at the job on Monday the 3rd but he later refused to undertake the job; that another plumber came to the premises on the 4th and agreed to do the work and ordered the material on that date; that he repaired the ruptured riser on the 5th and heat and hot water were restored that afternoon.
*86 Article 6 (§ 4-1, subd [a]) of the Housing Code of the City of Mount Vernon imposes a duty upon every person who has undertaken to furnish heat for a residential building to furnish sufficient heat so that minimum temperatures as set forth in the statute will be achieved and maintained. Clearly, those minimum amounts of heat were not provided at the premises. Article 10 of the housing code subjects the violator to potential fines and imprisonment, as provided by the statute. The People assert that the failure to furnish the statutory minimum of heat imposes liability upon the property owner without regard to the intent of the property owner or the cause or circumstances of the failure to furnish the heat. It is a case of “strict liability”, the People urge.
On the other hand the defendant asserts that if the statute intends to impose “strict liability” then it is violative of the defendant’s constitutional rights under the Fourteenth Amendment of the United States Constitution and section 6 of article I of the New York State Constitution. He also attacks the statute and its penalty provisions as being so vague as to deny the defendant adequate apprisal of the charges against him and the penalties which he faces.
The court sees no basis to find the statute unconstitutional. Statutes which impose “strict liability”, whose offenses are “malum prohibitum” are acceptable in law. They are particularly appropriate in city ordinances, designed to protect the health and welfare of the community. They are in the words of People v Treen (33 Misc 2d 571, 572) designed “for protecting the welfare of society and more adequately carrying on the purpose of civil life.” 'Nor is there any basis for concluding that the penalty provision of the city ordinance is inadequate to advise the defendant of the penalties which he may face if the regulatory statute is violated.
However, even in cases of violations of “malum prohibitum” statutes, consideration must be given to the elements which impose criminal accountability and responsibility — and the statute herein charged to be violated is criminal in nature. It even subjects the violator to possible imprisonment. In order, therefore, to impose criminal responsibility *87 there must be either an overt act or a failure to act. Involuntary acts cannot sustain a conviction. The applicable law was stated in People v Shaughnessy (66 Misc 2d 19, 20) as follows:
“The problem presented by the facts in this case brings up for review the primary elements that are required for criminal accountability and responsibility. It is only from an accused’s voluntary overt acts that criminal responsibility can attach. An overt act or a specific omission to act must occur in order for the establishment of a criminal offense. (People v. Walrath, 279 App. Div. 56; Marks and Paperno, Criminal Law in New York, Under the Revised Penal Law, ch. 4, § 24, p. 44; Clark and Marshall, Crimes ch. 4, § 4.00.)
“The physical element required has been designated as the actus reus. The mental element is of course better known as the mens rea. While the mental element may under certain circumstances not be required as in crimes that are designated as malum prohibitum, the actus reus is always necessary. It certainly cannot be held to be the intent of the Legislature to punish involuntary acts.”
Further, the court stated (p 20): “The legislature may prescribe that an act is criminal without regard to the doer’s intent or knowledge, but an involuntary act is not criminal (with certain exceptions such as involuntary acts resulting from voluntary intoxication).”
The court concludes that the act which originally deprived the premises of heat was an involuntary act. The defendant had furnished an adequate heating system with sufficient fuel oil but there was a disruption nonetheless but not because of any overt act or omission on the part of the defendant. The subsequent difficulty in obtaining the repairs flowed from the original involuntary occurrence and should not be used to impose criminal responsibility.
The court is not unaware of its prior decision in People v Hilliard (City Ct, City of Mount Vernon, May ll, 1978) in which it sustained (as it does now) the “strict liability” imposed by the City of Mount Vernon heating statute. However, in that case the lack of heat was not triggered by an involuntary act or circumstance but rather by the *88 failure of the defendant to furnish and maintain in the first instance an adequate heating system.
Owners of residential property who are obligated to furnish heat continue to be strictly liable under the statute for failure to do so, without regard to their motivations or intent, unless the failure to furnish the heat has been caused by circumstances beyond the owner’s control or causation.
Accordingly, the defendant is found “not guilty”.